**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| TEXAS ASSOCIATION FOR MONEY SERVICES BUSINESSES (TAMSB), | § § § § § | |
| *Plaintiff*, | § | |
| v. | § § | CIVIL ACTION NO. 25-344 |
| PAM BONDI, ATTORNEY GENERAL OF THE UNITED STATES; SCOTT BESSENT, SECRETARY OF THE TREASURY; UNITED STATES DEPARTMENT OF THE TREASURY; ANDREA GACKI, DIRECTOR OF THE FINANCIAL CRIMES ENFORCEMENT NETWORK; FINANCIAL CRIMES ENFORCEMENT NETWORK, | § § § § § § § § § § § § | Complaint for Declaratory Judgment and Injunctive Relief |
| *Defendants*. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR**

**DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

**INTRODUCTION**

Money Services Business (MSB) play a critical role in the American economy. For millions of Americans and visitors to our country, these businesses exchange currency, make money orders, wire transfer money, and provide other services for the unbanked. Most MSBs in Texas along the border are small, privately-held, family businesses that offer currency exchange at competitive prices where it is needed. On March 11, 2024, the Financial Crimes Enforcement Network (FINCEN) issued a Geographic Targeting Order that requires all money services businesses located in 30 ZIP codes across California and Texas near the southwest border to file Currency Transaction Reports (CTRs) with FinCEN at a $200 threshold, in connection with cash transactions. A typical CTR (filed via FinCEN Form 112) includes customer identity

1

information, details about the transaction, and information about the MSB and its employee performing the transaction. The current financial threshold for a CTR is $10,000 per transaction. As a result, the average number of CTRs for a typical MSB is estimated to increase by several orders of magnitude. For instance, one company which is a member of TAMSB has reported that it currently averages 9 CTRs across its dozens of locations in Texas per week. Now should the order become effective, this MSB will need to file nearly 50,000 CTRs per week.

The administrative burden on the typical MSB will be financially ruinous for these businesses. Most customers of money services businesses in the targeted zip codes will take their business elsewhere, largely to similar stores in Mexico where many are unregulated. Most Members of TAMSB will simply cease to exist if this Geographic Targeting Order becomes effective. The blast radius of the effect of this order will not just affect MSBs, but rather a whole microcosm of commerce in these zip codes. Many American border communities are heavily reliant on transnational commerce. The end of MSBs in these zip codes will destroy these economies, as well.

TAMSB files this suit seeking declarative and injunctive relief against the misguided overreach of FINCEN and the federal government.

**PARTIES**

1.     Plaintiff Texas Association for Money Service Businesses (TAMSB) brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the Fifth Amendment to the United States Constitution. Plaintiff seeks to challenge the unlawful and unconstitutional application of a Geographic Targeting Order ("GTO") issued by FinCEN, which imposes burdensome and

discriminatory obligations on Plaintiff without lawful basis. TAMSB is a Texas non-profit organization, whose members are Money Services Businesses affected by the Geographic targeting order (GTO). TAMSB's principal place of business in which it transacts all of its business is in San Antonio, Texas.

2.      Defendant Pam Bondi is the Attorney General of the United States and is sued in her official capacity as the chief law enforcement officer of the United States.

3.      AG Bondi is responsible for the uniform administration and enforcement of federal criminal law in the United States, including the offenses created by the Bank Secrecy Act.

4.      Defendant Scott Bessent is the United States Secretary of the Treasury and is sued in his official capacity as the head of the U.S. Department of the Treasury.

5.      Defendant U.S. Department of the Treasury is an executive agency of the United States tasked with administration and enforcement of the Bank Secrecy Act and its implementing regulations.

6.      Defendant Andrea Gacki is the Director of the Financial Crimes Enforcement Network (FinCEN), a bureau of the U.S. Department of the Treasury, and is sued in her official capacity as head of FinCEN.

7.      Defendant Financial Crimes Enforcement Network is a bureau of a federal agency tasked with administration and enforcement of the CTA and its implementing regulations.

**JURISDICTION AND VENUE**

8.      This Court has jurisdiction pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331.

9.      This Court has the authority to grant an injunction and declaratory judgment in this matter pursuant to 28 U.S.C. §§ 2201, 2202, and 5 U.S.C. §§ 705, 706(2).

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) because Defendants are federal agencies and officers, and Plaintiff resides and conducts business in this district.

**FACTS**

11. Money Services Businesses (MSBs) play a crucial role in Texas's financial ecosystem, providing essential services such as money transmission, currency exchange, and issuing or redeeming money orders and traveler's checks. These businesses are regulated at both federal and state levels to ensure compliance with financial laws and to protect consumers.

12. An MSB is generally defined as any person or entity that conducts one or more of the following activities: currency exchange, check cashing, issuing or selling traveler's checks, money orders, or stored value cards, or money transmission.

13. In Texas, MSBs are regulated under the Money Services Modernization Act, codified in Chapter 152 of the Texas Finance Code. This legislation outlines the licensing requirements and operational standards for MSBs operating within the state. The Texas Department of Banking oversees the implementation and enforcement of these regulations.

14. MSBs in Texas must adhere to several compliance obligations, including registration with FINCEN, Anti-Money Laundering (AML) Programs, Recordkeeping and Reporting.

15. The Texas Department of Banking has the authority to enforce compliance through examinations and investigations. Non-compliance can result in administrative penalties, license suspension or revocation, and, in some cases, criminal charges.

16. MSBs are integral to Texas's financial landscape, facilitating various monetary transactions for individuals and businesses. Strict regulatory oversight ensures these entities operate transparently and ethically, safeguarding the financial system and its participants.

17. The federal framework under the Bank Secrecy Act (BSA) and related FinCEN regulations is strict and aggressively enforced.

18. MSBs are subject to comprehensive federal regulation under the Bank Secrecy Act (BSA) and its implementing regulations administered by the Financial Crimes Enforcement Network (FinCEN), a bureau of the U.S. Department of the Treasury. As part of this framework, MSBs are required to register with FinCEN, implement and maintain a written anti-money laundering ("AML") program, and comply with federal recordkeeping and reporting obligations.

19. Among the core regulatory duties imposed on MSBs are:  registration with FinCEN within 180 days of beginning operations, implementation of an AML program that includes risk-based internal controls, training, independent testing, and designation of a compliance officer; Filing of Suspicious Activity Reports (SARs) for certain transactions, and Currency Transaction Reports (CTRs) for cash transactions over $10,000.

20. Failure to comply with these regulations carries significant civil and criminal consequences. Under 31 U.S.C. §§ 5318 and 5321, civil penalties may be imposed in amounts of up to $5,000 per day for failure to register as an MSB, and up to $100,000 or more per violation for failures related to AML programs or reporting obligations. Additionally, criminal penalties may be imposed under 31 U.S.C. § 5322 for willful violations, including up to five years' imprisonment and fines of $250,000 for individuals and $500,000 for business entities.

21. In 2022, for example, FinCEN imposed a $1.5 million civil penalty on a money services business that failed to file required reports and operated without an AML program. The same entity was criminally charged for willful violations of the BSA.

22. Accordingly, compliance with FinCEN regulations is not merely procedural—it is essential to the lawful operation and survival of an MSB within the regulated financial environment.

23. Under the authority granted by the Bank Secrecy Act (BSA), 31 U.S.C. § 5318(a)(2), and its implementing regulations at 31 C.F.R. § 1010.370, the Secretary of the Treasury, acting through the Financial Crimes Enforcement Network (FinCEN), may issue Geographic Targeting Orders ("GTOs"). These administrative orders require domestic financial institutions or trades and businesses in a defined geographic area to collect, report, and retain information about certain transactions that would not otherwise trigger mandatory reporting under the BSA.

24. A GTO is a temporary regulatory action that may be issued for a period of up to 180 days, and may be renewed repeatedly. GTOs are not enacted through formal rulemaking, and do not require notice-and-comment procedures, but carry the force of law once issued. They may apply to any "financial institution" as defined by FinCEN regulations, including money services businesses (MSBs).

25. FinCEN has issued GTOs in various contexts, including real estate transactions, cash-based businesses, and high-volume transaction corridors. These orders often impose enhanced data collection and reporting obligations, including identification of customers, recordkeeping of transaction details, and periodic submission of information to FinCEN or other law enforcement agencies.

26. Businesses subject to a GTO must comply under threat of civil and criminal penalties for noncompliance. Such penalties may include substantial fines, suspension or revocation of licenses, and referrals to federal law enforcement for investigation. GTOs are typically enforced without individualized suspicion or findings related to a specific business or actor. Instead, FinCEN issues the order based on its assessment of geographic trends in money laundering or other financial crime risks.

27. The application of GTOs to MSBs often results in substantial compliance burdens, including increased administrative costs, changes to transaction monitoring systems, and exposure to heightened enforcement risk. Businesses may receive no formal notice or opportunity to contest inclusion, and GTOs are not subject to internal administrative appeal or waiver processes.

28. In recent years, GTOs have been issued in areas with large immigrant or minority populations, raising concerns about disparate impact, lack of individualized findings, and potential overreach beyond FinCEN's statutory authority.

29. On March 11, 2025, the Financial Crimes Enforcement Network (FinCEN) issued a Geographic Targeting Order (GTO) aimed at combating illicit financial activity associated with Mexico-based cartels and other criminal organizations operating along the U.S. southwest border. The order imposes enhanced reporting requirements on money services businesses (MSBs) located in specific areas of Texas and California.

30. Per the order, MSBs operating within 30 designated ZIP codes are required to file Currency Transaction Reports (CTRs) for cash transactions exceeding $200, a significant reduction from the standard $10,000 threshold. This adjustment is intended to improve transparency and facilitate detection of structured or suspicious activity.

31.     The GTO is effective from April 14, 2025, through September 9, 2025, unless renewed or modified.

32.     The order applies to MSBs located in the following Texas counties and ZIP codes: Cameron County: 78520, 78521; El Paso County: 79901, 79902, 79903, 79905, 79907, 79935; Hidalgo County: 78503, 78557, 78572, 78577, 78596; Maverick County: 78852; Webb County: 78040, 78041, 78043, 78045, and 78046.

33.     MSBs covered by the GTO are required to: 1) file CTRs for cash transactions exceeding $200 but not exceeding $10,000. This includes deposits, withdrawals, exchanges, or other forms of currency transfer; 2) verify and record the identity of individuals conducting such transactions, in line with anti-money laundering (AML) program requirements; and 3) submit CTRs within 15 calendar days of the transaction date.

34.     Members of TAMSB have multiple stores contained within the counties affected by the GTO and face irreparable injury should the GTO go into effect.

35.     The GTO imposes a substantial compliance burden on affected MSBs, requiring immediate updates to reporting protocols, staff training, and internal controls. Businesses that fail to comply may face civil or criminal penalties, including fines and potential loss of licensure.

## CLAIMS FOR RELIEF

### Count I: Violation of the Administrative Procedure Act
### The GTO is not in Accordance with Law and is Contrary to Constitutional Right (5 U.S.C. § 706(2))

36.     Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

37. The Administrative Procedure Act (APA) directs a court to "hold unlawful and set aside" any agency rule that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right," or "in excess of statutory jurisdiction [or] authority." 5 U.S.C. § 706(2)(A), (B), (C).

38. The GTO is "final agency action," which is reviewable under the APA. *See* 5 U.S.C. § 704.

39. The GTO also determines rights and legal obligations, as it purports to establish filing deadlines, including the time to file reports and corrected reports, and sets out criteria for determining what information must be reported.

**Count II: Violation of APA – Exceeding Statutory Authority (5 U.S.C. § 706(2)(C))**

40. Plaintiffs repeat and reallege each every allegation above as fully set forth herein.

41. The Bank Secrecy Act (BSA), 31 U.S.C. § 5311 et seq., grants the Secretary of the Treasury limited and specific authority to issue Geographic Targeting Orders (GTOs) pursuant to 31 U.S.C. § 5326(a). That statute permits the issuance of temporary orders requiring domestic financial institutions or trades and businesses within a narrowly defined geographic area to report certain currency transactions when there is a reasonable belief that such transactions may be related to a violation of federal law.

42. The statute limits the duration of any such order to 180 days and imposes a requirement that the Secretary reasonably identify the class of transactions and the geographic area subject to the order. GTOs were originally designed as a tool to assist law enforcement in detecting structured transactions and other forms of money laundering activity in narrowly tailored, high-risk areas.

43. In issuing the March 11, 2025 Geographic Targeting Order applicable to money services businesses (MSBs) in Texas and other Southwest border regions, the Financial Crimes Enforcement Network (FinCEN), acting under delegated authority from the Secretary of the Treasury, exceeded the bounds of its statutory authority in both scope and substance. The order imposes sweeping compliance obligations on a broad class of financial institutions across multiple counties, many of which lack any individualized findings or current, case-specific evidence of criminal activity.

44. Moreover, the order reduces the currency transaction reporting threshold from $10,000 to $200—an unprecedented and ultra vires expansion of FinCEN's authority. There is no express or implied statutory basis within the Bank Secrecy Act or its implementing regulations that authorizes FinCEN to impose such a low-dollar threshold, nor to do so indefinitely through successive renewals without formal rulemaking or congressional authorization.

45. The March 2025 GTO is also devoid of procedural safeguards, individualized findings, or administrative recourse, effectively converting what was intended as a temporary investigative tool into a de facto rule of general applicability. In doing so, FinCEN has exercised legislative-type powers that exceed the scope of its delegated administrative authority under the BSA and violate the APA.

46. Accordingly, the March 2025 GTO must be set aside as unlawful under 5 U.S.C. § 706(2)(C), because it was issued in excess of statutory jurisdiction, authority, or limitations, and is not in accordance with law.

**Count III: Violation of APA – Procedural Defects (5 U.S.C. § 553)**

**Defendants failed to provide notice-and-comment rulemaking.**

47. The Administrative Procedure Act (APA), 5 U.S.C. § 553, establishes that federal agencies must engage in notice-and-comment rulemaking before adopting rules that affect the rights and obligations of regulated parties, unless a specific statutory exemption applies. Under the APA, a "rule" includes any agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy.

48. On March 11, 2025, the Financial Crimes Enforcement Network (FinCEN), acting under delegated authority from the Secretary of the Treasury, issued a Geographic Targeting Order (GTO) applicable to money services businesses (MSBs) operating in thirty ZIP codes across Texas and California. This GTO significantly alters the legal obligations of affected MSBs by lowering the transaction reporting threshold from $10,000 to $200 and requiring the identification, recordkeeping, and reporting of routine cash transactions far below the existing regulatory minimums.

49. The issuance of the GTO operates as a binding rule of general applicability, imposing new substantive compliance requirements that extend beyond the statutory and regulatory baseline set by the Bank Secrecy Act and its implementing rules. Affected MSBs are compelled to modify internal operations, file additional transaction reports, collect customer data for previously exempt transactions, and face potential penalties for noncompliance—all without any opportunity to submit comments or raise objections prior to implementation.

50. Despite the substantial and ongoing impact of this order on a class of regulated businesses, FinCEN did not fully initiate or properly conduct notice-and-comment rulemaking as prescribed by law.

51. This failure to engage in notice-and-comment procedures violates the APA and deprives affected parties, including Plaintiff, of procedural rights guaranteed by law. The GTO

therefore constitutes an unlawful agency action that must be set aside under 5 U.S.C. § 706(2)(D) as it was issued "without observance of procedure required by law."

### Count IV: Violation of Due Process Clause (Fifth Amendment)

52. The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person of life, liberty, or property without due process of law. This constitutional guarantee includes both procedural and substantive protections, ensuring that federal agency action is not arbitrary, oppressive, or undertaken without notice and a meaningful opportunity to be heard.

53. The March 11, 2025 Geographic Targeting Order (GTO), issued by the Financial Crimes Enforcement Network (FinCEN), imposes mandatory recordkeeping, reporting, and identification requirements on money services businesses (MSBs) operating in thirty ZIP codes across Texas and California. These obligations are imposed under threat of civil penalties, criminal liability, and potential loss of licensure for noncompliance.

54. The GTO applies automatically and indiscriminately to all MSBs located within the designated ZIP codes, regardless of whether there is any individualized suspicion or evidence of wrongdoing. FinCEN provided no advance notice to affected businesses prior to the issuance of the order, and no mechanism exists to seek an exemption, request a hearing, or appeal inclusion under the GTO's coverage.

55. Plaintiff, along with similarly situated MSBs, was not notified of the agency's intent to impose these expanded regulatory burdens, was not given an opportunity to respond or contest inclusion, and was not afforded any forum in which to challenge the order's application. As a result, Plaintiff is subject to sudden and significant compliance obligations—enforceable by law—without any due process safeguards.

56. Furthermore, the application of the GTO to businesses based solely on geographic location, without individualized findings or a rational basis for targeting all entities within those ZIP codes, constitutes arbitrary and capricious government action. The GTO's indefinite renewability and lack of procedural protections compound its due process deficiencies.

57. Accordingly, the issuance and enforcement of the March 2025 GTO violate the Fifth Amendment rights of Plaintiff and other similarly situated businesses by depriving them of protected property interests without notice, hearing, or an opportunity to contest the agency's determination, in violation of constitutional due process.

**Count V: Violation of Equal Protection Clause (Fifth Amendment) – Racial Discrimination**

58. Although the Equal Protection Clause is found in the Fourteenth Amendment and applies to state action, the Supreme Court has long held that the Fifth Amendment's Due Process Clause incorporates equivalent equal protection guarantees that apply to the federal government. Federal agencies, including the Department of the Treasury and its sub-agency FinCEN, are therefore constitutionally prohibited from taking actions that are motivated by racial animus or that discriminate on the basis of race or national origin without a compelling governmental interest and narrowly tailored means.

59. On March 11, 2025, the Financial Crimes Enforcement Network (FinCEN) issued a Geographic Targeting Order (GTO) that imposes enhanced regulatory burdens on all money services businesses (MSBs) located within thirty ZIP codes across Texas and California. In Texas, the ZIP codes selected are overwhelmingly concentrated in counties and neighborhoods with large populations of Latino, Mexican American, and Mexican National residents.

60. The Plaintiff and many similarly situated MSBs affected by the GTO are owned and operated by individuals of Mexican American descent or serve predominantly Latino

immigrant communities. The services these MSBs provide—including remittances, check cashing, and currency exchange—are closely tied to the cultural and economic practices of these communities. The imposition of sweeping compliance burdens on these businesses, without individualized justification or evidence of wrongdoing, disproportionately affects minority-owned MSBs and the communities they serve.

61. Upon information and belief, the GTO's geographic scope was selected in part based on racial or ethnic demographics, rather than any narrowly tailored, evidence-based law enforcement need. Despite the availability of more targeted enforcement mechanisms, FinCEN chose to blanket entire ZIP codes with invasive and punitive reporting obligations that function as a form of regulatory profiling.

62. Moreover, the government has not issued comparable orders in non-Latino communities with similar or higher risk indicators, and no meaningful effort has been made to assess or mitigate the racially disparate impact of the GTO. The GTO thus operates as a facially neutral policy that results in disparate treatment and disparate impact on the basis of race and national origin, in violation of the equal protection guarantees incorporated into the Fifth Amendment.

63. Plaintiff has suffered and continues to suffer injury as a result of this unconstitutional discrimination, including heightened compliance burdens, reputational harm, economic disadvantage, and the stigmatization of operating in a targeted ethnic enclave without lawful justification.

64. Accordingly, the March 2025 GTO violates the Fifth Amendment's equal protection guarantees and must be enjoined and set aside.

**Count VI: Violation of Equal Protection Clause (Fifth Amendment) – Political Discrimination**

65. The Equal Protection component of the Fifth Amendment's Due Process Clause prohibits the federal government from engaging in intentional viewpoint-based or political discrimination absent a compelling governmental interest and a means narrowly tailored to achieve it. The government may not penalize or burden individuals or entities based on their political affiliation, associations, or the political character of the communities in which they reside or operate.

66. On March 11, 2025, the Financial Crimes Enforcement Network (FinCEN) issued a Geographic Targeting Order (GTO) directing enhanced compliance obligations at money services businesses (MSBs) operating within thirty ZIP codes across Texas and California. In Texas, the targeted ZIP codes are concentrated in counties and municipalities—such as El Paso, Hidalgo, Webb and Cameron Counties—that have been historically and consistently Democratic in local, state, and federal elections.

67. Upon information and belief, the geographic scope of the GTO was not based exclusively on financial crime data or neutral risk metrics. Rather, the selection of covered areas aligns closely with political demographics, disproportionately subjecting Democratic-leaning regions to increased federal surveillance and regulatory burden, while exempting similarly situated jurisdictions with comparable economic or geographic risk indicators but Republican-leaning voter bases.

68. The Plaintiff operates in one or more of the identified Democratic strongholds and is now subject to additional federal oversight, intrusive data collection requirements, and enhanced threat of enforcement solely by virtue of geographic location. The GTO does not

provide any mechanism to challenge inclusion or seek exemption, nor does it identify specific evidence justifying its blanket application to these communities. There is no lawful justification for the differential treatment of MSBs located in predominantly Democratic regions when similarly situated businesses elsewhere are left unaffected.

69. By selectively imposing burdens based on the political character of local jurisdictions, FinCEN has engaged in viewpoint discrimination in violation of the Fifth Amendment's equal protection guarantees. The order constitutes an unconstitutional exercise of governmental power that penalizes political association without sufficient justification or procedural safeguards.

70. Accordingly, the March 2025 GTO must be declared unlawful and set aside as a violation of the Fifth Amendment.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

(i) The issuance of an injunction prohibiting Defendants from enforcing the GTO pursuant to 5 U.S.C. § 705 and 28 U.S.C. § 2201;

(ii) A declaratory judgment, pursuant to 5 U.S.C. § 706(2) and 28 U.S.C. § 2202, invalidating the GTO;

(iii) An award of attorneys' fees and costs to Plaintiff; and

(iv) Any other relief as the Court deems just, equitable and proper.

| | |
|---|---|
| **DATE**: April 1, 2025 | Respectfully submitted,<br><br>By: */s/ Martin Golando*<br><br>The Law Office of Martin Golando, PLLC<br>Texas Bar No. 24059153<br>2326 W. Magnolia<br>San Antonio, Texas 78201<br>Office: (210) 471-1185<br>Email: martin.golando@gmail.com<br><br>Roland Gutierrez<br>The Law Office of Roland Gutierrez<br>SBN #: 24007291<br>104 Babcock Ste. 107<br>San Antonio, Texas 78201<br>(210) 225-7114<br><br><br>ATTORNEYS FOR PLAINTIFF |