UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| TEXAS ASSOCIATION FOR MONEY SERVICES BUSINESSES (TAMSB); HIGH VALUE, INC.; REYNOSA CASA DE CAMBIO, INC.; NYDIA REGALADO d/b/a BEST RATE EXCHANGE; MARIO REGALADO d/b/a BORDER INTERNATIONAL SERVICES; LAREDO INSURANCE SERVICES, LLC; E.MEX. FINANCIAL SERVICES, INC.; R & C, INC. d/b/a TEMEX MONEY EXCHANGE; SAN ISIDRO MULTI SERVICES, INC.; CRIS WIN INC. d/b/a BROWNSVILLE CASA DE CAMBIO; ESPRO INVESTMENT LLC d/b/a LONESTAR MONEY EXCHANGE; and ARNOLDO GONZALEZ, Jr.,<br><br>*Plaintiffs*,<br><br>v.<br><br>PAM BONDI, ATTORNEY GENERAL OF THE UNITED STATES; SCOTT BESSENT, SECRETARY OF THE TREASURY; UNITED STATES DEPARTMENT OF THE TREASURY; ANDREA GACKI, DIRECTOR OF THE FINANCIAL CRIMES ENFORCEMENT NETWORK; and FINANCIAL CRIMES ENFORCEMENT NETWORK,<br><br>*Defendants*. | Civil Case No. 5:25-cv-00344-FB |

**PLAINTIFFS' OPPOSED MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD AND MEMORANDUM OF LAW IN SUPPORT**

### INTRODUCTION

Plaintiffs respectfully move to have the Administrative Record supplemented with all testimony and exhibits the Court heard at the temporary restraining order hearing, the declarations

the Court received in support of Plaintiffs' motion for a preliminary injunction, and the testimony and exhibits the Court will hear at the preliminary injunction hearing on May 12, 2025. As the Court well knows at this point from the TRO proceedings and the preliminary injunction briefing, Plaintiffs challenge Defendant Financial Crimes Enforcement Network's ("FinCEN's") Geographic Targeting Order ("GTO" or "Border GTO") that requires Money Services Businesses ("MSBs") in 30 zip codes along the southern border to file Currency Transaction Reports for every transaction over $200. Among other constitutional claims, Plaintiffs argue that the GTO violates the Administrative Procedure Act because FinCEN failed to do required notice and comment, and because the GTO is arbitrary and capricious.

In its witness disclosure notice on May 6, 2025, the government reiterated its position that "[j]udicial review of the merits of Plaintiffs' claim is generally limited to review of the existing administrative record, not a new factual record made in district court." ECF 43 at 1. But the problem with the Administrative Record here is that FinCEN cooked it up behind closed doors without any input from anyone outside FinCEN. It didn't do notice and comment rulemaking. And the GTO was not the result of an adjudicatory proceeding before FinCEN in which the Plaintiffs here (or anyone else) had the opportunity to put in evidence.

The due process problem is obvious. FinCEN can't manufacture a record behind closed doors that deliberately excludes all unfavorable evidence and then insist in court that no other evidence be considered. Judge O'Connor up in Fort Worth hit the nail on the head in granting a motion to supplement last year when an agency tried to do the same thing FinCEN is doing here:

> Imagine that, instead of machineguns, Defendants were classifying fruits. Imagine further that Defendants decided to evaluate an orange and in doing so, on their own and with no public input, determined that the orange is really a potato. Under Defendants' view of the world, there would be no mechanism for challenging Defendants' classification, even though it is plainly wrong, because there is nothing in the administrative record that says differently.

*Nat'l Ass'n for Gun Rights, Inc. v. Garland*, 741 F. Supp. 3d 568, 600 (N.D. Tex. 2024), *appeal docketed*, No. 24-10707 (5th Cir. Aug. 6, 2024). That sums it up. FinCEN insists that the GTO is a vital crimefighting tool—pointing to its ginned-up Administrative Record—while demanding that the Court not consider evidence that, in the real world, it's just a senseless wrecking ball causing immense harm to legitimate businesses.

The Court need not rule on this motion before the hearing. And the Court may conclude that deciding the motion is ultimately unnecessary because the legal and constitutional defects in the GTO are obvious, even under the manufactured Administrative Record. Plaintiffs simply want the motion available to the Court if it decides that formally supplementing the Record is the best way to proceed.[1]

## STATEMENT OF FACTS

Plaintiffs trust that the Court is amply familiar with the facts. In the interest of brevity, they direct the Court to their preliminary injunction brief and reply for any specific facts. ECF 22, 45. The key fact for resolution of this motion is undisputed: FinCEN created the Administrative Record after this litigation began, from sources it selected without giving MSBs (or any member of the public) any opportunity to contribute anything.

## LEGAL STANDARD

The general rule is that APA review is limited to the agency record. *See, e.g.*, *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Sierra Club v. U.S. Dep't of Interior*, 990 F.3d 898, 907 (5th Cir. 2021). But this rule cuts both ways. The government generally cannot supplement the record it created or resort to post hoc justifications for challenged agency action. *Luminant Generation Co.*

---

[1] Undersigned counsel conferred with government counsel under Local Rule 7(G). The government opposes this motion.

*v. U.S. E.P.A.*, 675 F.3d 917, 925 (5th Cir. 2012) ("We must disregard any *post hoc* rationalizations of the EPA's action and evaluate it solely on the basis of the agency's stated rationale at the time of its decision.").

Supplementing the administrative record is appropriate when plaintiffs bring constitutional claims. Courts reviewing agency action "have allowed the introduction of extra-record evidence on constitutional claims" because "a court reviewing the constitutionality of agency action must make 'an independent assessment of a citizen's claim of constitutional right.'" *Texas v. Biden*, No. 2:21-CV-067-Z, 2021 WL 4552547, at *3 (N.D. Tex. July 19, 2021) (quoting *Porter v. Califano*, 592 F.2d 770, 780 (5th Cir. 1979)).

Additionally, on motion, a court may allow supplemental evidence into the record if "the moving party demonstrates 'unusual circumstances justifying a departure' from the general presumption that review is limited to the record compiled by the agency." *Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010) (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)). The Fifth Circuit employs a three-factor test: "(1) the agency deliberately or negligently excluded documents that may have been adverse to its decision; (2) the district court needed to supplement the record with background information in order to determine whether the agency considered all of the relevant factors; or (3) the agency failed to explain administrative action so as to frustrate judicial review." *Medina*, 602 F.3d at 706 (cleaned up).

The federal district courts have largely equated this with an eight-factor test: supplementation is appropriate "(1) when agency action is not adequately explained in the record before the court; (2) when looking to determine whether the agency considered all relevant factors; (3) when a record is incomplete; (4) when a case is so complex that a court needs more evidence

to enable it to understand the issues; (5) when evidence arising after the agency action shows whether the decision was correct or not; (6) in certain NEPA cases; (7) in preliminary injunction cases; and (8) when an agency acts in bad faith." *City of Dallas, Tex. v. Hall*, No. 3:07-CV-0060-P, 2007 WL 3257188, at *5 (N.D. Tex. Oct. 29, 2007). These eight factors largely "fit within" the three *Medina* factors. *La Union del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 141 F. Supp. 3d 681, 694 (S.D. Tex. 2015); *Rethink35 v. Tex. Dep't of Transp.*, No. 1:24-CV-00092-ADA, 2025 WL 1191594, at *3 (W.D. Tex. Mar. 6, 2025).

## ARGUMENT

Supplementation of the Administrative Record is appropriate because Plaintiffs bring constitutional claims, *see Texas v. Biden*, 2021 WL 4552547, at *3, and under factors (1), (2), (3), and (7) of the *City of Dallas* eight-factor test. First, the Court should allow supplementation of the record because Plaintiffs' evidence is critical to the Court's preliminary injunction analysis (factor 7). Second, FinCEN's failure to furnish an opportunity for Plaintiffs and the public to provide input into the Admin Record merits supplementation under factors (1), (2), and (3).

**I.   The Court should supplement the record because Plaintiffs' evidence is critical to the Court's preliminary injunction analysis of irreparable harm, the equities, and the scope of relief.**

This Court should consider evidence and live testimony regarding the impact of FinCEN's $200 GTO on MSBs like Plaintiffs and their customers. This evidence is crucial to the Court's determination of irreparable harm, the balance of the equities, and the scope of injunctive relief. Under *City of Dallas* factor (7), courts routinely consider evidence outside the administrative record "in preliminary injunction cases," 2007 WL 3257188, at *5. *See, e.g.*, *Nat'l Ass'n for Gun Rights, Inc.*, 741 F. Supp. 3d at 600 (noting that the court considered evidence outside the record at the preliminary-injunction stage in challenge to agency action that did not consider public input); *Texas v. Biden*, No. 2:21-CV-067-Z, 2021 WL 4552547, at *3 (N.D. Tex. July 19, 2021) ("[T]he

5

record rule also does not limit the evidence this Court can consider when determining the propriety of injunctive relief."). "This is because injunctive relief is generally not raised in the administrative proceedings below and, consequently, there usually will be no administrative record developed on these issues. Thus, it will often be necessary for a court to take new evidence to fully evaluate claims of irreparable harm and claims that the issuance of the injunction is in the public interest." *Id.* (quotation omitted). The Court should consider Plaintiffs' evidence on the latter preliminary injunction factors, "notwithstanding Defendants' objections." *Nat'l Ass'n for Gun Rights*, 741 F. Supp. 3d at 600.

**II.     This Court should also supplement the record for considering the likelihood of success on the merits because FinCEN did not afford an opportunity for Plaintiffs and the public to provide input.**

A basic precept of procedural due process is notice and an opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." (cleaned up)). FinCEN cannot exclude the public, including MSBs, from contributing to the Admin Record and then insist in court that Plaintiff MSBs and Plaintiff Gonzalez must litigate their constitutional and statutory claims on a closed Admin Record. After all, the premise of restricting an APA claim to a closed administrative record at the litigation stage—that there was a chance to contribute to the administrative record at the pre-litigation stage when the matter is still before the agency—simply is not met here. *See Nat'l Ass'n for Gun Rights, Inc.*, 741 F. Supp. 3d at 600 (explaining that courts should not "functionally defer to" a record "made without any opportunity for input or challenge from Plaintiffs and the broader public"). Plaintiffs' evidence should thus be treated as part of the Administrative Record when considering the likelihood of success on the merits. The Court cannot fairly consider the merits on a record that is defective under *City of Dallas* factors (1), (2), and (3).

6

## A. The record did not adequately explain FinCEN's actions (factor 1) and is incomplete (factor 3).

The Admin Record "is incomplete" and FinCEN's actions "[are] not adequately explained in the" Admin Record. *City of Dallas*, 2007 WL 3257188, at *5. "The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 855 (5th Cir. 2022) (quoting *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)). An incomplete record without public input cannot do this.

Factors (1) and (3) are closely related, as an incomplete administrative record cannot explain why an agency acted the way it did. For example, in *Independent Turtle Farmers of Louisiana, Inc. v. United States*, an association of turtle farmers challenged two agencies' ban on the sale of baby turtles. 703 F. Supp. 2d 604 (W.D. La. 2010). The plaintiff moved to supplement the administrative record and argued that the record did "not contain any science or background surrounding either the decision to ban baby turtles or the rationale to continue the ban." *Id.* at 612. The court granted the plaintiff's motion to supplement the administrative record with scientific articles post-dating the agencies' decision not to lift the ban. *Id.* at 612–13. The court found that the articles, which "discuss[ed] the history and impacts of the Turtle Ban, and the risk of *Salmonella* contraction following exposure to sources other than baby turtles, including certain types of food, pets, and pet food," "serve[d] primarily to show that the agency did not adequately explain its action in the administrative record supplied to the court" and "buttress[ed] points that were raised by the [plaintiff] in its petition and supporting documents, and also serve[d] as background evidence." *Id.* at 612 (cleaned up).

The Admin Record here does not contain input from Plaintiffs and the public about the effect of the GTO on MSBs like Plaintiffs and their customers. Like the scientific articles in

*Independent Turtle Farmers*, Plaintiffs' evidence here will demonstrate that FinCEN implemented its GTO based on an incomplete record and without adequately explaining itself.

### B.     FinCEN did not consider all relevant factors (factor 2).

FinCEN did not "consider[] all relevant factors" when creating its Admin Record to support the GTO. *City of Dallas*, 2007 WL 3257188, at *5. Courts routinely grant motions to supplement the administrative record when agencies do not take into account everything they should. *See, e.g.*, *Rethink35*, 2025 WL 1191594, at *4 (granting motion to supplement the record because the Texas Department of Transportation allegedly failed to analyze a highway expansion's impact on emissions and declined to prepare a supplemental environmental impact statement in light of new national air quality standards); *Texas v. U.S. Dep't of Homeland Sec.*, No. 6:23-CV-00007, 2023 WL 2842760, at *3 (S.D. Tex. Apr. 7, 2023) (granting motion for extra-record discovery when federal government might have "ignored critical factors in its implementation of" a parole program for foreign nationals).

Indeed, just last year, in *National Association for Gun Rights, Inc. v. Garland*, Judge O'Connor considered evidence outside the administrative record under factors (2), (4), and (5) in a challenge to the Bureau of Alcohol, Tobacco, Firearms and Explosives' broadening of the definition of "machine gun" to include forced reset triggers ("FRTs"). 741 F. Supp. 3d 568, 599 (N.D. Tex. 2024), *appeal docketed*, No. 24-10707 (5th Cir. Aug. 6, 2024). In analyzing factor (2), the court noted, "[w]hether an agency considered all relevant factors can sometimes only be determined by looking outside the record to see what the agency may have ignored." *Id.* (cleaned up). Furthermore,

> [t]here was no public comment period during which Plaintiffs, or anyone else, could weigh in and correct errors in the agency's administrative process as it relates to FRT operation. Rather, Defendants classified FRTs as "machineguns" based entirely on their own analysis and on a record of their own making. The extra-record

> information reflects documentation that is adverse to the agency's determination and reveals factors which are relevant to [the ATF's] final decision.

*Id.* (cleaned up).

The fundamental problem was the agency's failure to consider "input or challenge from Plaintiffs and the broader public." *Id.* at 600. The court found that the agency could not rig the administrative record in its favor and then insist that the analysis be confined to a closed record. Indeed, the court noted that "one need not exert much energy to imagine the abuses that could result." *Id.*

The Admin Record here suffers from the same obvious flaw. FinCEN cherrypicked all the sources without any input from anyone outside the government. The Admin Record here is neither the result of a rulemaking nor an adjudication. Because FinCEN did not go through the notice and comment procedure, members of the public, such as MSBs in the 30 targeted zip codes, had no opportunity to offer testimony and evidence into the record raising the problem of impacts on MSBs, and FinCEN had no corresponding duty under the notice and comment process to provide a reasoned explanation for the $200 GTO in light of concerns raised by the public. Likewise, because the GTO was not the product of an adjudication in which any MSBs (much less Plaintiff MSBs here) were parties, there was no opportunity for any entity or person to submit evidence into an adjudicatory record. The Admin Record here consists solely of sources that FinCEN itself selected and did so for the obvious purpose of justifying the $200 GTO. This "raise[s] questions as to whether the agency deliberately or negligently excluded [evidence] that may have been adverse to its decision." *Id.* at 599 (quotation omitted).

Plaintiffs' evidence regarding the effect of the GTO on MSBs like Plaintiffs and their customers is critical to every stage of this litigation. FinCEN did not consider these factors. The Court should.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to supplement the administrative record with Plaintiffs' evidence in support of a temporary restraining order and preliminary injunction.

Dated: May 8, 2025

Martin Golando
The Law Office of Martin Golando, PLLC
Texas Bar No. 24059153
2326 W. Magnolia
San Antonio, Texas 78201
Office: (210) 471-1185
Email: martin.golando@gmail.com

Roland Gutierrez
The Law Office of Roland Gutierrez
SBN #: 24007291
104 Babcock Ste. 107
San Antonio, Texas 78201
(210) 225-7114

*Attorneys for Plaintiffs Texas Association for Money Services Businesses (TAMSB); Reynosa Casa De Cambio, Inc.; Nydia Regalado d/b/a Best Rate Exchange; Mario Regalado d/b/a Border International Services; Laredo Insurance Services, LLC; E.Mex. Financial Services, Inc.; R & C, Inc. d/b/a Temex Money Exchange; San Isidro Multi Services, Inc.; Cris Win Inc. d/b/a Brownsville Casa De Cambio; and Espro Investment LLC d/b/a Lonestar Money Exchange*

Respectfully submitted,

/s/ Jeffrey Rowes
Jeffrey Rowes (TX Bar No. 24104956)*
Christen Mason Hebert (TX Bar No. 24099898)
INSTITUTE FOR JUSTICE
816 Congress Ave., Suite 970
Austin, TX 78701
(512) 480-5936
jrowes@ij.org
chebert@ij.org

Robert E. Johnson (DC Bar No. 1013390)*
INSTITUTE FOR JUSTICE
16781 Chagrin Blvd., Suite 256
Shaker Heights, OH 44120
(703) 682-9320
rjohnson@ij.org

Elizabeth L. Sanz (CA Bar No. 340538)*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
bsanz@ij.org

Katrin Marquez (FL Bar No. 1024765)*
INSTITUTE FOR JUSTICE
2 South Biscayne Blvd., Suite 3180
Miami, FL 33131
(305) 721-1600
kmarquez@ij.org

* Admitted *pro hac vice*

*Attorneys for Plaintiffs Arnoldo Gonzalez, Jr. and High Value, Inc.*

## CERTIFICATE OF SERVICE

    I certify that on May 8, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will provide electronic service upon all attorneys of record.

<u>/s/ Jeffrey Rowes</u>
Jeffrey Rowes (TX Bar No. 24104956)*
