IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| TEXAS ASS'N FOR MONEY SERVICES BUSINESSES (TAMSB), *et al.*<br><br>    *Plaintiff*s,<br><br>                v.<br><br>PAM BONDI, in her official capacity as Attorney General; SCOTT BESSENT, in his official capacity as Secretary of the Treasury; UNITED STATES DEPARTMENT OF THE TREASURY; ANDREA GACKI, in her official capacity as the Director of the Financial Crimes Enforcement Network; FINANCIAL CRIMES ENFORCEMENT NETWORK,<br><br>    *Defendants*. | Civil Action No. 25-cv-344 |

**RESPONSE TO ORDER TO SHOW CAUSE**

Defendants are not "retaliating" against a witness in this case, and Plaintiffs' speculation to the contrary is unsupported by any scintilla of evidence. By Order dated May 27, 2025, the Court directed that Defendants "show cause why the audit notice received by the business of Andres Payan, Jr. does not constitute unlawful retaliation for the testimony of Mr. Payan in this litigation," and asked "if these audit notices are sent to others similarly situated." ECF No. 62. This memorandum and attached declarations conclusively demonstrate that the examination of Payan's Fuel Center is not retaliatory and is being conducted in accordance with normal procedures applicable to registered money services businesses ("MSBs," as defined in the BSA regulations at 31 C.F.R. § 1010.100(ff))).

1

Plaintiffs speculate that the Internal Revenue Service ("IRS"), a separate component of the U.S. Department of the Treasury that has had no prior involvement in this case, chose to pursue an audit of Payan's Fuel Center as a result of the testimony of Mr. Payan at the preliminary injunction hearing in this litigation. *See generally* Pls.' Mot. For an Order to Show Cause, ECF No. 60 ("Pls.' Mot."). As Mr. Payan is well aware, the business where he works (his father's gas station and convenience store) has been the subject of regular examinations by the IRS, and the IRS has found violations by Payan's Fuel Center in the course of each recent audit. These past violations, in fact, formed the basis for the audit letter filed by Plaintiffs, and Defendants' submissions show that none of the involved decisionmakers had any awareness of the above-captioned case. The Financial Crimes Enforcement Network ("FinCEN"), the separate bureau of the U.S. Department of the Treasury whose actions are being challenged in this case, played no role in the decisions related to case selection or examination of Payan's Fuel Center.

## STATUTORY AND REGULATORY BACKGROUND

The Commissioner of Internal Revenue ("Commissioner") has been delegated authority to examine certain financial institutions, including MSBs, to determine their compliance with the Bank Secrecy Act ("BSA"). Ex. 1, Declaration of Andrea Gacki ("Gacki Decl.") ¶ 5. The IRS, through its Small Business/Self-Employed Division, determines which MSBs are scheduled for BSA compliance examination consistent with the Internal Revenue Manual ("IRM") processes. *Id.*; *see also* Ex. 2, Declaration of Melissa A. Wuebbels ("Wuebbels Decl.") ¶ 6.

In general, IRS manages the process of selecting and examining financial institutions as set forth in the IRM. Wuebbels Decl. ¶¶ 8-9, 15-21. It proceeds in four steps: identification, selection, delivery, and examination. *Id.* ¶ 9. The IRS BSA Case Selection unit is responsible for the identification, selection, and delivery of cases to BSA Examination, and BSA Examination is

responsible for conducting examinations and education/outreach to ensure appropriate BSA compliance. *Id*. ¶ 8. IRS's BSA Case Selection Coordinators select entities for BSA examinations using risk-based analysis to identify entities with the highest potential of non-compliance, taking into consideration the priorities in the annual work plan, available resources, case grading guidelines, balanced coverage (geographic area and industry), and anticipated field inventory needs. *Id*. ¶ 17. Among multiple other sources for case selection, the IRM provides that, when an examiner closes a case and issues a Violation Notification Letter, they can mark the case in the Title 31 Database with a future follow up date, which flags the entity for case selection in the future. *Id*. ¶ 16. Additional considerations listed in the IRM to be considered in case selection include, for example, compliance history and audit history, along with multiple other factors. *Id*. ¶¶ 18-19. After a case is identified and selected, a lot of factors can affect how long the case sits in inventory before additional action is taken, including priorities and resource constraints. *Id*. ¶ 20. Once it is referred for examination and assigned to an examiner, the examiner will need to either examine the case in accordance with IRM or document the conclusion that an examination will result in no material change. *Id*. ¶21; *see also* Ex. 3, Declaration of Khloe Williams ("Williams Decl.").[1]

---

[1] Ms. Williams is testifying under a pseudonym as authorized by statute and regulation for certain IRS employees. *See* Williams Decl. ¶ 1. Section 3706 of the IRS Restructuring and Reform Act of 1998 (RRA 98) authorizes the use of pseudonyms for IRS employees with appropriate justification. *See* Pub. L. No. 105-206, 112 Stat. 685, codified at 26 U.S.C. 7804, note. *See* IRS, Internal Revenue Manual 10.5.7, Use of Pseudonyms by IRS Employees (July 29, 2015). *See, e.g., United States v. Reed*, 75 F.4th 396, 402 (4th Cir. 2023); *Haber v. U.S.*, 823 F.3d 746, 755 n.6 (2d Cir. 2016).

3

<u>PAYAN'S FUEL CENTER</u>

The following facts demonstrate that the audit is wholly unrelated to this case and is not retaliatory:

Plaintiffs' witnesses testified that their MSBs are subject to routine IRS audits. *See* May 12, 2025 PI Hearing Transcript at 54-55, 71 (Mr. Salinas testified that "we are routinely audited by the Texas Department of Banking and also by the IRS for Title 31" and opined that these "routine" IRS audits that were somewhat less regular than Texas's audits that occur every 18 months); 127 (Ms. Alvarado testified that they are subject to "random" IRS audits; 219 (Ms. Light testified as to regular IRS audits); *see also* TRO Tr. at 40 (counsel describing the IRS audit process, including that an "IRS audit happens more often than not in most businesses", and noting that one other TAMSB member was "just recently" audited by the IRS), 53 (Mr. Martinez describing IRS audits). And Mr. Payan agreed that his records could be examined by federal regulators. PI Tr. 112.

Payan's Fuel Center, Inc. has had three prior IRS BSA compliance examinations in recent years, including audits that concluded in 2008, 2015, and 2019. Wuebbels Decl. ¶ 10(b). Thus, there is nothing remotely unexpected about IRS conducting another audit in 2025, around six years after his last audit concluded.

Moreover, all three of these most recent audits resulted in the IRS issuing a Violation Notification Letter, to Payan's Fuel Center, Inc., meaning Payan's has a history of repeated BSA violations. Wuebbels Decl. ¶ 10(b).[2]

---

[2] Compare these violations with the testimony of Ms. Alvarado that errors in her business are extremely rare, with human errors resulting in errors in maybe 1 out of 500 CTRs. PI Hrng Tr. 127.

The most recent Violation Notification Letter was issued September 18, 2019, and BSA Examination marked the case in its database with a 2023 follow-up date in light of the history of BSA violations. Wuebbels Decl. ¶ 10(d)(i). In fact, on April 26, 2023, BSA Case Selection followed up on this matter, and the current case was identified and selected for examination. In other words, the file reflects that the case was selected in 2023 based on the past violation identified and documented in 2019. *Id*. ¶ 10(d)(ii). On April 19, 2024, Payan's current examination was forwarded from BSA Case Selection to the examination group that will handle the case. *Id*. ¶ 10(d)(iii). Thus, the case was selected and forwarded for examination about a year before the present lawsuit was filed, and that selection, consistent with IRS policy and practice, was based on the history of past violations. *Id*. ¶¶ 10(d)(ii)-(iii), 14, 19.

For nearly a year, the case was inactive, and when the agent to which it was assigned left government employment, it was reassigned to a new agent on April 28, 2025. Williams Decl. ¶ 11(i). The previous agent's workload at the time had prevented him from starting this examination. *Id*. The new agent reviewed the case file and conducted a renewed conflict check on or around May 12, 2025. *Id*. ¶ 11(ii). The agent determined, based on a review of the case file and the multiple prior violations, that the case should be examined. *Id*. ¶ 11(iv). The agent then issued the audit letter in accordance with the IRM, which prescribes the form and conduct of such communications. *Id*. ¶¶ 11(v), 14-15. This is entirely consistent with how IRS handles examinations of businesses with past violations like Payan's Fuel Center. Nothing in the file mentions this lawsuit or Mr. Payan's testimony, the lawsuit played no role in the examiner's determination, and the agent was in fact unaware of it when determining that examination was appropriate. *Id*. ¶¶ 12-13.

Thus, none of the decisionmakers involved in the examination were aware of this lawsuit, much less Mr. Payan's testimony. FinCEN, a separate bureau of the U.S. Department of the Treasury whose actions are at issue in this lawsuit, has testified that it played no role in the examination. FinCEN did not direct, coordinate, or consult on any such action, and is not retaliating against Payan's Fuel Center, Inc., Andres Payan, Jr., any witness in this matter, or any business or individual otherwise associated with Plaintiffs. Gacki Decl. ¶¶ 9-11.

In any event, Plaintiffs' insinuation of scandal and bad faith is without merit or reasonable factual basis. Plaintiffs were in fact aware that MSBs are routinely subject to audits and that there is nothing unusual about this one, especially given Payan's Fuel Center's repeated past violations of the BSA. The coincidental timing does not give rise to an inference of any relationship between the two actions under these circumstances, much less an inference of retaliation, a remarkable accusation of nefarious activity by the federal government, wholly unwarranted by the facts here.

It is unclear what relief Plaintiffs may be seeking here. They point generally to the Court's authority to prevent retaliation against witnesses, citing, for example, a case about bail conditions to prevent witness retaliation. *See* Pls.' Mot. at 2-3. They invoke no specific authority nor suggest specific action from the Court that would be appropriate. There is no arguable basis for contempt sanctions, given that no court order was arguably violated. *See* ECF No. 59 (order reaching only the plaintiffs). And there is no basis here for injunctive relief on behalf of a non-party witness. *Cf. Lopez v. Reliable Clean-Up & Support Services LLC*, No. 3:16-CV-2595-D, 2017 WL 6611615, at *4 (N.D. Tex. Nov. 15, 2017) (finding party alleging retaliation had not met standard for showing retaliation or issuing a preliminary injunction), objections overruled, No. 3:16-CV-2595-D, 2017 WL 6611578 (N.D. Tex. Dec. 27, 2017); *Members Only Dental, PA v. State Farm Lloyds*, No. 4:19-CV-00437, 2022 WL 842850, at *1 (E.D. Tex. Mar. 21, 2022) (allegations of

verbal abuse of witnesses insufficient to show irreparable injury). Payan's Fuel Center certainly cannot show that it is likely to be irreparably harmed by a statutorily authorized examination that was first selected long before this case was filed, and it would be extraordinary to interfere in IRS's lawful examination in this manner. And Plaintiffs cannot show that they will be harmed at all, given that neither Mr. Payan nor his business are plaintiffs in this action, and his testimony is not likely to be relevant to any further proceedings in this matter. Thus, there is no danger that this Court's fact-finding at summary judgment on the basis of review of an administrative record could be in any way impaired.[3]

Here, however, the Court need not resolve any theoretical questions about the scope of its inherent authority because there is just no reason whatsoever to conclude that Defendants in anyway retaliated against Mr. Payan. Payan's Fuel Center, like other MSBs, is subject to IRS audits of its BSA compliance, just as it has been in the past, and he cannot avoid examination of the MSB's records by testifying in a lawsuit.

Dated June 6, 2025                                    Respectfully submitted,

                                                      YAAKOV ROTH
                                                      Acting Assistant Attorney General

                                                      STEPHEN M. ELLIOTT
                                                      Assistant Director, Federal Programs Branch

                                                      /s/ Amy E. Powell
                                                      AMY E. POWELL
                                                      Senior Trial Counsel
                                                      United States Department of Justice
                                                      Civil Division, Federal Programs Branch
                                                      c/o U.S. Attorney's Office for EDNC
                                                      150 Fayetteville St, Suite 2100

---

[3] To the extent they are yet again seeking to expand the injunction entered by the Court, there is no reason to revisit that decision, especially now that Payan's Fuel Center has filed a separate lawsuit. *See Valuta Corp., et al. v. FinCEN, et al.*, No. 3:25-cv-191 (W.D. Tex).

Raleigh, NC 27601
Tel.: 919-856-4013
Email: amy.powell@usdoj.gov

*Counsel for Defendants*