UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| TEXAS ASSOCIATION FOR MONEY SERVICES BUSINESSES (TAMSB); HIGH VALUE, INC.; REYNOSA CASA DE CAMBIO, INC.; NYDIA REGALADO d/b/a BEST RATE EXCHANGE; MARIO REGALADO d/b/a BORDER INTERNATIONAL SERVICES; LAREDO INSURANCE SERVICES, LLC; E.MEX. FINANCIAL SERVICES, INC.; R & C, INC. d/b/a TEMEX MONEY EXCHANGE; SAN ISIDRO MULTI SERVICES, INC.; CRIS WIN INC. d/b/a BROWNSVILLE CASA DE CAMBIO; ESPRO INVESTMENT LLC d/b/a LONESTAR MONEY EXCHANGE; and ARNOLDO GONZALEZ, Jr., <br><br> *Plaintiffs*, <br><br> v. <br><br> PAM BONDI, ATTORNEY GENERAL OF THE UNITED STATES; SCOTT BESSENT, SECRETARY OF THE TREASURY; UNITED STATES DEPARTMENT OF THE TREASURY; ANDREA GACKI, DIRECTOR OF THE FINANCIAL CRIMES ENFORCEMENT NETWORK; and FINANCIAL CRIMES ENFORCEMENT NETWORK, <br><br> *Defendants*. | Civil Case No. 5:25-cv-00344-FB |

**PLAINTIFFS' RESPONSE TO GOVERNMENT'S
RESPONSE TO ORDER TO SHOW CAUSE**

Hidden among all the government's protestations is this key fact: The IRS agent responsible for the audit of Andres's business started the audit process the very same day that Andres testified at the preliminary injunction hearing: "On May 12, 2025, I conducted an initial

1

review of Payan's' electronic case file . . . ." Williams Dec. (Doc. 63-3) ¶ 11.ii. If anything, then, the government's filing heightens the concerns that first led Plaintiffs to raise this issue. Plaintiffs were troubled that the audit letter was dated two days after Andres's testimony at the hearing. The government's response shows that the agent who sent the letter picked up the case file the very same day that Andres testified.

The government's response is also notable for what it does not contain: any explanation of *why* the agent picked up the case file the very same day that Andres testified. The materials filed by the government show that Andres's file sat at the IRS for years without action; Andres's business was "selected for examination on April 26, **2023**," over two years ago, and was "placed in virtual BSA Case Selection inventory to await further assignment." Wuebbels Decl. (Doc. 63-2) ¶ 10.d.ii. Yet the audit languished for years, apparently because an "agent's workload at the time prevented him from starting this examination." Williams Decl. ¶ 11.i. But then, on May 12, the very day of the hearing, an agent picked up the file and made it a priority—starting the audit process and sending out the audit letter only two days later. *Id.* ¶¶ 11.ii, 11.v. In other words, after years of bureaucratic delay, the IRS's machinery kicked into high gear when Andres testified. Why exactly did that happen? The papers are silent on that question.

Another notable omission: The IRS agent who took that action—picking up the file and sending the audit letter—does not state that nobody asked her to prioritize Andres's audit. The agent states that "I was not aware of Andres Payan Jr. or Payan's Fuel Center, Inc.'s involvement in case no 5:25-cv-00344-FB," and that "his involvement in that case could not have played any role in my determination and in fact did not." Williams Decl. ¶ 13. This is carefully crafted language, and it quite clearly does not rule out the possibility that somebody at the IRS (or

2

elsewhere in government) was aware of the testimony in this case and asked or instructed the agent to prioritize Andres's audit.[1]

Ultimately, then, we are left pretty much where we started before the government filed its response to the show cause order. The timing of the audit is highly suspicious; the government has offered no real explanation for the timing; and the government's filing does not rule out the possibility that the agent who picked up the file was instructed to do so by somebody who was aware of Andres's testimony. The government loudly protests "Plaintiffs' insinuation of scandal and bad faith." Resp. to Show Cause Order (Doc. 63) at 6. But, to be clear, Plaintiffs are open to the possibility that all this is just a strange coincidence. Plaintiffs simply think it is a coincidence that requires explanation.[2] And, given the gaps in the government's filing, Plaintiffs reluctantly must state that they are not entirely satisfied with the explanation that has been provided.

Finally, the government complains that it is "unclear what relief Plaintiffs may be seeking here." Resp. to Show Cause Order at 6. However, at this point, the only relief that Plaintiffs are

---

[1] The closest we have to such a statement is the agent's declaration that, "I followed the requirements of the IRM and my ordinary practices." Williams Decl. ¶ 13. But this statement could just as easily mean that the agent followed her "ordinary practices" with respect to the case file after she was asked or instructed to do so. Meanwhile, the declaration submitted by Andrea Gacki, the head of FinCEN, is limited to testifying "to the best of my knowledge" and likewise does not rule out the possibility of retaliation. Gacki Decl. (Doc. 63-1) ¶ 11.

[2] That is all the more true given that retaliation is, so to speak, in the air. *See, e.g.*, Bart Jansen, *Trump Threatens 'Very Serious Consequences' if Elon Musk Finances Republican Challengers*, USA Today (June 8, 2025), https://www.usatoday.com/story/news/politics/2025/06/07/trump-threatens-serious-consequences-elon-musk/84091541007/ (noting, in wake of public debate between President Trump and Elon Musk, that "Trump has already threatened to cancel Musk's government subsidies for electric carmaker Tesla and contracts for rocket company SpaceX"); *Justice Dept. Fires Jan. 6 Prosecutors Amid Campaign of Retribution by Trump*, N.Y. Times (May 24, 2025), https://www.nytimes.com/live/2025/01/30/us/president-trump-news (explaining that Trump administration fired more than a dozen prosecutors involved in prosecutions of January 6 protestors); *see also Perkins Coie LLP v. U.S. Dept. of Justice*, -- F. Supp. 3d --, 2025 WL 1276857, at *3 (D.D.C. May 2, 2025) ("Using the powers of the federal government to target lawyers for their representation of clients . . . is contrary to the Constitution . . . . That, however, is exactly what is happening here.").

seeking is an explanation for the oddly coincidental timing of this audit notice.[3] Because the government's response raises as many questions as it answers, Plaintiffs respectfully suggest that it would be appropriate to hold a fact-finding hearing on this issue, at which the responsible IRS officials could be called to testify, or in the alternative to authorize Plaintiffs to conduct a limited amount of discovery—including focused document requests to explore communications surrounding the audit and a brief deposition of the responsible IRS agent.

Dated: June 9, 2025

Respectfully submitted,

/s/ Robert E. Johnson
Robert E. Johnson (DC Bar No. 1013390)*
INSTITUTE FOR JUSTICE
16781 Chagrin Blvd., Suite 256
Shaker Heights, OH 44120
(703) 682-9320
rjohnson@ij.org

Jeffrey Rowes (TX Bar No. 24104956)*
Christen Mason Hebert (TX Bar No. 24099898)
INSTITUTE FOR JUSTICE
816 Congress Ave., Suite 970
Austin, TX 78701
(512) 480-5936
jrowes@ij.org
chebert@ij.org

Elizabeth L. Sanz (CA Bar No. 340538)*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
bsanz@ij.org

Martin Golando
THE LAW OFFICE OF MARTIN GOLANDO, PLLC
Texas Bar No. 24059153
2326 W. Magnolia
San Antonio, Texas 78201
Office: (210) 471-1185
Email: martin.golando@gmail.com

Roland Gutierrez
THE LAW OFFICE OF ROLAND GUTIERREZ
SBN #: 24007291
104 Babcock Ste. 107
San Antonio, Texas 78201
(210) 225-7114

*Attorneys for Plaintiffs Texas Association for Money Services Businesses (TAMSB); Reynosa Casa De Cambio, Inc.; Nydia Regalado d/b/a Best Rate Exchange; Mario Regalado d/b/a Border International Services; Laredo Insurance Services, LLC; E.Mex. Financial Services, Inc.; R & C, Inc.*

---

[3] If the government ultimately cannot provide a sufficient explanation, then, as the opening Motion explained, the Court has inherent authority to issue appropriate relief. *See* Doc. 60 at 2-3. Appropriate relief could include an order delaying any audit until after final judgment—at which point Andres would no longer face the double burden of complying with an audit while also complying with the GTO—or even just monetary sanctions or (at a minimum) an admonition. *See, e.g., Michael v. Boutwell*, 138 F. Supp. 3d 761, 782-87 (N.D. Miss. 2015). Whatever the appropriate remedy, potential misconduct of this nature pertaining to a proceeding in this Court should not go uninvestigated.

| | |
|---|---|
| *d/b/a Temex Money Exchange; San Isidro Multi Services, Inc.; Cris Win Inc. d/b/a Brownsville Casa De Cambio; and Espro Investment LLC d/b/a Lonestar Money Exchange* | Katrin Marquez (FL Bar No. 1024765)*<br>INSTITUTE FOR JUSTICE<br>2 South Biscayne Blvd., Suite 3180<br>Miami, FL 33131<br>(305) 721-1600<br>kmarquez@ij.org<br><br>* Admitted *pro hac vice*<br><br>*Attorneys for Plaintiffs Arnoldo Gonzalez, Jr. and High Value, Inc.* |

## CERTIFICATE OF SERVICE

I certify that on June 9, 2025, I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system, which will provide electronic service upon all attorneys of record.

/s/ Robert E. Johnson